**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ANTAWAN JOHNSON, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 15-cv-6078 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| RANDY PFISTER, Warden, | ) | |
| Stateville Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Antawan Johnson seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [1]. For the reasons set forth below, the Court denies Petitioner's application [1]. The Court declines to certify any issue for appeal pursuant to 28 U.S.C. § 2253(c)(2), and directs the Clerk to enter judgment in favor of Respondent.

**I.     Background**

**A.     State Court Proceedings**

**1.     Criminal Trial**

On May 27, 2005, a Cook County, Illinois jury found Petitioner guilty of first degree murder and unlawful discharge of a firearm for the June 2001 shooting death of Cortez Bell. On July 5, 2005, Petitioner was sentenced to an aggregate term of 50 years of imprisonment.

Petitioner and co-defendant Naja Triplett were tried together. At trial, the State presented testimony from Airrion Smith and Jessie Knox—two witnesses who said they were "shooting dice" with Bell and others in Chicago Heights on June 16, 2001. According to Smith, Petitioner approached the group and offered to sell a .22 rifle and .22 shotgun for $100. When no one expressed interest, Petitioner borrowed $5 from Smith and joined the group to shoot dice. He

won some money at first, but lost his winnings after moving down the block to a higher-stakes game. Shortly afterwards, Triplett approached Petitioner on a bicycle. Petitioner told Triplett that although he had lost his money, "[w]e on some bulls**t." [20-2, at 9.] Triplett responded, "I want some bulls**t too." *Id.* Petitioner informed Triplett that he had two guns in his backyard and the two men left. *Id.* About 45 minutes later, Smith and another player, Clifton Ross, left the game and walked across the street to an abandoned house, where they observed Petitioner and Triplett standing with "two long guns." [20-3, at 6.] Smith testified that he saw Petitioner and Triplett aim their guns at the group playing dice and fire three or four shots. Smith and Ross fled, but Smith later returned and found Bell on the sidewalk bleeding.

Knox's testimony largely corroborated Smith's testimony about Petitioner's request to borrow money, his loss of that money playing dice, the particulars of the conversation between Petitioner and Triplett, and their leaving together. On direct examination, Knox testified that he remained with the group shooting dice until he saw Smith and Ross running down the driveway of the abandoned house across the street. Knox then heard gun shots and ran around the corner until the shooting ceased. When he returned, he saw Bell lying on the ground bleeding. Knox was questioned by the police and later by the state's attorney, and gave testimony to the grand jury that was consistent with this version of events.

On cross examination, Knox was confronted with an affidavit that he signed on November 22, 2004—more than three years after the incident—stating that "On the night of June 16, 2001, [Triplett] and [Petitioner] tried to sell some guns to us, Money, Alonzo, Robert, Jessie, Clifton, and Cortez and Eric [Gill]. Eric convinced us to [r]ob them. We tried to and they came but everything went wrong and it resulted in the death of Cortez Bell." [20-2, at 10.] The

affidavit further stated that Knox did not tell the police about Triplett and Petitioner trying to sell guns because Knox did not want any further problems.

On redirect, however, Knox explained that he completed the affidavit at the request of Petitioner's brother. Specifically, Petitioner's brother approached Knox with a blank affidavit and a piece of notebook paper with writing on it. At the brother's request, Knox transferred what was written on the notebook paper to the affidavit, signed it, and then was driven to a notary. Knox testified that he was not pressured to complete the affidavit, but he did not know anyone named Eric and no one named Eric was with him on the date of the shooting. Knox also reaffirmed that his grand jury testimony was correct and the information in the affidavit was not.

The State also called Petitioner's 2001 girlfriend, Tina McKee, who testified about a conversation she had with Petitioner at her mother's house on the day after the shooting. At that meeting, Petitioner purportedly told her that someone had taken his money and that he and a friend had fired their guns, although they had not fired at anyone in particular. According to McKee, Petitioner said that he fired his gun first, then Triplett shot his gun, and "when they were done shooting, the boy [Bell] fell to the ground." [20-1, at 4.] The State then confronted McKee with her prior statement to Assistant State's Attorney Alzetta Bozeman-Martin in which McKee said that the meeting with Petitioner had occurred on the day of the shooting (not after) at her aunt's home (not her mother's home). In that affidavit, she indicated that Petitioner told her, "I feel like killing these mother f**kers," and he and Triplett had gone to Triplett's grandmother's garage to retrieve a "long gun" and .22 caliber gun. McKee testified that she had lied to Bozeman-Martin (and the grand jury) when she gave this statement because she had been put in a jail cell and was told that she could return home only if she cooperated and signed this statement. McKee also denied receiving threatening letters from Petitioner following his arrest.

The State also called Chicago Heights Detective Mikal El-Amin and ASA Bozeman-Martin about their interview with Petitioner on July 7, 2001, the day after his arrest. During that interview, Petitioner signed a statement confessing to shooting into the crowd of dice players. Specifically, Petitioner admitted that he, Triplett, and the other men playing dice were members of the Four Corner Hustlers street gang and there was an ongoing feud over territory. Four days prior to the shooting, in fact, Triplett had been beaten because was in the "wrong area." [20-3, at 10.] For these reasons, he and Triplett left the area where the men were playing dice, went drinking, and then returned with two .22 caliber rifles and began shooting. *Id.* On cross-examination, Detective El-Amin admitted that he had destroyed his original notes from Petitioner's July 7 interview and from the other interviews that he had conducted with witnesses of the shooting. [1, at Ex. S, at MM-13–14.] He testified that he reduced these original notes to a summary report and then destroyed the originals pursuant to the practice of Chicago Heights Police Department. *Id.* at MM-13–14.

Petitioner testified as the sole witness in his defense. He corroborated the broad contours of Smith and Knox's description of the initial events: he approached the group playing dice, asked to borrow money, lost his initial winnings after moving to a higher-stakes game, and offered to sell two .22 caliber rifles for $100. His description of later events diverges from the others. He testified that Smith requested that he get the guns and meet across the street. Petitioner then left to find Triplett, who owned the guns, and Triplett rode up on his bicycle. Petitioner said that he "got a sale for the guns," but Triplett did not believe him and accused Petitioner of being "on some bulls**t." [1, at Ex. S, at MM-145.] Petitioner responded that he "wasn't in on any bulls**t," and in fact had a buyer. *Id.* The two then left and returned an hour or two later. When they arrived, a group of people led by Gill approached them and asked to see

4

the guns and if they were loaded. Triplett removed a bullet from his gun to show Gill and asked him, "where the money at." *Id.* at MM-150. Petitioner then heard a noise from behind and saw Smith and Ross running towards them. Gill tried to grab the gun out of Triplett's hand, the two men struggled, and Petitioner fired his gun telling everyone to "freeze." *Id.* at MM-152. Triplett then placed the bullet back into the gun, shot into the crowd, and both men fled.

Petitioner testified that he saw McKee at her mother's house a "couple of days" later, but denied saying he shot anyone or into the crowd. *Id.* at MM-154. He also testified that he told all of this to the police, but later decided to give them a different "story," not a "confession," once Detective El-Amin confronted him with Knox's statements. *Id.* at MM-158–59; [20-3, at 12]. According to Petitioner, a "confession" is true, while a "story" is not. [20-3, at 12.] On cross-examination, he admitted that he and Triplett had fired their guns. [1, at Ex. S, at MM-177.]

At the jury instruction conference, the trial judge accepted the State's version of Illinois Pattern Instruction 3.11 for prior inconsistent statements. [See 20-14, at 63.] The pattern instruction distinguishes between statements used as impeachment and substantive evidence. The substantive evidence language in the instruction is bracketed, indicating that it is "alternative language" that may not be appropriate in all cases. Ill. Pattern Jury Instructions, Criminal No. 1 (4th Ed. 2000). The note accompanying this instruction states, in part, that "[w]hen both kinds of earlier inconsistent statements are used for [substantive and impeachment] purposes this instruction should be given in its entirety at the close of the trial." *Id.* at No. 3.11 committee note. The instruction offered by the State contained the pattern instruction's concluding language stating that it is up to the jury "to determine what weight should be given to [the prior] statement" and the jury "should consider all of the circumstances under which it was made" in making that determination, but did not contain the language from the pattern instruction on how

prior written or signed statements can be considered substantive evidence. [20-14, at 63.] Petitioner's trial counsel agreed to this instruction without objection. [See 1, at Ex. N, at NN-6.]

Petitioner's counsel also offered instructions on the lesser-included offense of reckless discharge of a firearm and spoliation of evidence, both of which the trial judge denied. [1, at Ex. N, at NN-13–20.] The trial judge rejected a spoliation instruction based on Detective El-Amin's testimony about his notes, reasoning that the jury had heard his testimony and could draw their own conclusions. *Id.* at NN-13–15. Regarding the lesser-included offense instruction, the trial judge accepted the State's argument that even if the jury believed Petitioner's testimony that Triplett had fired his gun into the crowd, Petitioner would still be guilty under an "accountability" theory—that is, he would have been "legally responsible for the conduct of another person when, either before or during the commission of an offense, and with the intent to promote or facilitate the commission of an offense, he knowingly solicits, aids, abets, agrees to aid, or attempts to aid the other person in the planning or commission of the offense." Ill. Pattern Jury Instructions, Criminal No. 5.3. Since this "accountability" instruction was accepted—over Petitioner's objection [1, at Ex. N, at NN-7–9]—the reckless discharge would not have been an appropriate lesser-included offense "based upon the totality of the evidence." *Id.* at NN-18.

Before closing arguments began, the trial court instructed the jury that "what the lawyers say is not evidence and should not be considered by you as evidence" and "the lawyers will simply be discussing what they believe the evidence has shown." [1, at Ex. D, at NN-32.] Three of the State's arguments are relevant. First, the prosecutor stated twice that the "most powerful piece of evidence in a criminal trial is a confession"—an argument advanced in the context of explaining how Petitioner's post-arrest statements corroborated Smith's testimony. *Id.* at NN-44–46. Second, the prosecutor stated that if "[a]ny questions come in up in the jury room, turn to

those jury instruction, that is your guide in this case to determine what is relevant and what is not.  If it's not in the jury instructions, it's not relevant, don't consider it."  *Id.* at NN-46.  Third, the prosecutor responded in rebuttal to Petitioner's argument that "[t]he most powerful piece of evidence in a criminal case is DNA" and "[y]ou don't have that."  *Id.* at NN-77.  The State said,

> Counsel made a big deal about DNA and that is the best kind of evidence and whatnot, that's true, there was no DNA found or recovered here.  You want to know why?  It's because * * * it's called a crime scene.  You want to know why it's called a crime scene?  Because it's controlled by the criminals.  Th[ey] decide it.  Like I started to tell you earlier, they decide what evidence is going to be left behind.  They decide what witnesses they are going to be out there and that they're going to allow to see everything that happened.  They decide.  If there was no DNA recovered, that is because he and his partner didn't allow it.  If there was no casings or anything recovered, that is because he and his criminal teammates didn't allow it.  And the guns weren't recovered, that is because he and his criminal teammates didn't allow it.  They control the crime scene.

*Id.* at NN-88–89.  Petitioner's trial counsel did not object to any of these arguments.

Following closings, the jury returned a guilty verdict against Petitioner.  Petitioner filed a posttrial motion for a new trial advancing thirteen somewhat overlapping arguments:  (1) the State failed to prove Petitioner guilty of the charges beyond a reasonable doubt, (2) the verdict was against the weight of the evidence, (3) Petitioner was denied due process of the law; (4) Petitioner was denied equal protection of the law; (5) the State failed to prove Petitioner guilty of every material allegation of the offense beyond a reasonable doubt; (6) Petitioner was denied a fair and impartial trial as guaranteed by the Illinois and United States Constitutions; (7) the court erroneously overruled Petitioner's motion for directed verdict; and (8) the verdict was based on evidentiary facts that do not exclude every reasonable hypothesis consistent with Petitioner's innocence; (9) the State erroneously shifted the burden of proof to Petitioner when it argued in closing that Petitioner chose the evidence; (10) the court erred in prohibiting an instruction for lesser-included offenses; (11) the court erred in the specific language of its accountability jury instruction; (12) the court erroneously allowed the State to reference Petitioner's alleged threats

against McKee; and (13) the court erred in not providing a spoliation instruction to disregard Detective El-Amin's testimony. [1, at Ex. E.] The trial judge denied the motion and sentenced Petitioner to consecutive 30- and 20-year terms of imprisonment.

### 2. Direct Appeal

In the direct appeal of his conviction, Petitioner raised two arguments: (1) the jury was erroneously instructed on prior inconsistent statements, and (2) the three statements from the State's closing argument described above were improper. [20-2, at 6.] On April 19, 2007, the Illinois Appellate Court rejected both arguments and affirmed. [See 20-1.] First, the court concluded that Petitioner had forfeited the jury instruction issue by failing to object at trial or raise the issue in his posttrial motion. [See 20-1, at 6–7.] The court also considered and rejected Petitioner's argument that the trial court's instruction constituted plain error or his counsel's failure to object demonstrated ineffective assistance of counsel, focusing on the "overwhelming evidence" at trial of Petitioner's guilt. *Id.* at 7–9. Second, the Appellate Court found that Petitioner's counsel "waived" (or, more accurately, forfeited) challenges to the State's closing argument by failing to object at trial. *Id.* at 10. The court again reviewed this issue under plain error and for ineffective assistance of counsel, and concluded that these statements—to the extent improper—did not merit reversal in light of the State's entire closing argument and the "overwhelming" evidence against Petitioner. *Id.* at 10–14.

On June 27, 2007, Petitioner filed a *pro se* petition for leave to appeal ("PLA") with the Illinois Supreme Court that reurged both of his direct appeal arguments. [20-5.] The Illinois Supreme Court denied the PLA on September 26, 2007. *People v. Johnson*, 875 N.E.2d 1118 (Ill. Sept. 26, 2007). Petitioner then filed a petition for writ of certiorari to the United States Supreme Court, which was denied on June 22, 2008. *Johnson v. Illinois*, 552 U.S. 1169 (2008).

### 3.    Collateral Proceedings

On April 2, 2008, Petitioner filed his initial *pro se* petition seeking relief under the Post-Conviction Hearing Act, 725 ILCS 5/122-1 *et seq.*, and an amended petition on April 10. [20-23, at 25–35.]  His amended petition asserted the following violations of his rights under the Illinois Constitution and the Sixth and Fourteenth Amendments to the United States Constitution: (1) the venire panel was not questioned about anti-gang bias; (2) the State's reliance on an "accountability" theory to prove murder impermissibly "broadened" the indictment; and (3) his trial and appellate counsel were ineffective for failing to raise these claims. *Id.* at 32–35. Petitioner was appointed counsel on May 16 [20-25, at 24–26], but he filed another *pro se* petition on July 22, repeating the arguments from his amended petition [1, at Ex. J, at 217–27].

Around April 27, 2011, Petitioner indicated his desire to proceed *pro se* and filed a new petition. [20-25, at 24–72.]  In addition to the anti-gang bias and accountability arguments from his 2008 petitions, Petitioner raised the following claims: (1) the trial judge abused his discretion by refusing to instruct the jury on the reckless discharge offense; (2) the State used hearsay evidence to impeach McKee; (3) the trial judge abused his discretion by denying the spoliation instruction; and (4) Petitioner's trial and appellate counsel were ineffective for failing to raise or properly argue these challenges. [20-23, at 45–100.]  In May 2011, Petitioner elected to remain with his appointed counsel, who adopted his 2011 petition without changes. [20-25, at 73–82.]

The State moved to dismiss Petitioner's amended petition on October 21, 2011. [1, at Ex. L, at 284–96.]  The Circuit Court of Cook County ruled orally and granted the State's motion on March 9, 2012. [20-25, at 111–19.]  With respect to the "accountability" arguments, the court held that "established case law" allows the State to indict a defendant as a principal and then proceed under a theory of accountability at trial. *Id.* at 113–14.  Because there was no error,

neither trial nor appellate counsel was ineffective for not raising these issues. *Id.* With respect to absence of gang-bias questions, the court considered this to be trial strategy and held that his counsel did not fall below an objective standard of reasonableness. *Id.* at 114. The court did not discuss Petitioner's other arguments specifically in his oral ruling, but concluded that "defendant has not therefore made a substantial showing of any constitutional violations." *Id.* at 115.

Petitioner appealed. [20-9.] First, he argued that his direct appellate counsel was ineffective for failing to seek review of the original trial judge's refusal to instruct the jury on lesser-included offenses and spoliation. Second, he argued that his post-conviction trial counsel was ineffective because she failed to advocate properly for him. Third, he argued that judge who heard his post-conviction claims "ignored many" of his allegations in his petition and the judge's "failure to read the amended petition" requires further proceedings. [20-9, at 53.]

On September 4, 2014, the Illinois Appellate Court affirmed. *See People v. Johnson*, 2014 IL App (1st) 120750-U. Applying Illinois case law to Petitioner's version of the facts, the Appellate Court held that the trial court correctly denied the lesser-included offense instruction. *Id.* ¶¶ 23–38. Specifically, Triplett's discharge of his firearm at Gill and others as they attempted to rob Petitioner and Triplett was an act in furtherance of their common criminal design, which meant no rational trier of fact could have found Petitioner guilty of only reckless discharge and not murder based on an accountability theory. *Id.* The Appellate Court further held that the failure to provide a spoliation instruction was harmless, adopting the original Appellate Court's conclusion that "the State adduced overwhelming evidence of petitioner's guilt" and the outcome at trial would not have been different with this instruction. *Id.* ¶¶ 39–50. The court concluded that Petitioner's post-conviction trial counsel's advocacy was "absolutely correct and wholly appropriate." *Id.* ¶¶ 51–55. And finally, the court rejected Petitioner's argument that the post-

conviction trial court had not read his petition, noting that "the trial court did not need to discuss every claim" as part of its ruling when it denied his petition in full. *Id.* ¶¶ 56–60.

On October 9, 2014, Petitioner filed a PLA with the Illinois Supreme Court, raising arguments related to the lesser-included offense and spoliation jury instructions only. [20-12.] The Illinois Supreme Court denied the PLA on November 26, 2014. *People v. Johnson*, 21 N.E.3d 716 (Ill. Nov. 26, 2015) (Table).

## B.    Section 2254 Petition

Petitioner filed his petition for writ of habeas corpus in federal court on July 9, 2015. [1.] He sets out the following six claims in his petition:

Claim 1:   The trial judge erroneously provided the jury with an incomplete instruction regarding the use of prior inconsistent statements;

Claim 2:   The State improperly argued during its closing at trial that "it is the defendant who decides what evidence is going to be presented to the jury, that the most powerful piece of evidence in a criminal trial is a confession, and that if it's not in the jury instructions, it is not relevant";

Claim 3:   Direct appellate counsel was ineffective for failing to raise the trial judge's denial of jury instructions on (a) lesser-included offenses, and (b) spoliation;

Claim 4:   The state post-conviction trial judge abused his discretion by dismissing Petitioner's post-conviction petition "before reading it";

Claim 5:   The original trial judge abused his discretion by denying Petitioner's request to instruct the jury on the lesser-included offense; and

Claim 6:   The original trial judge abused his discretion by denying Petitioner's request to instruct the jury on spoliation.

*Id.* at 8–11.  Petitioner has exhausted his state court remedies for these claims.  28 U.S.C. § 2254(c); 725 ILSC 5/122-1(f); [19, at 9].

## II.     Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996, habeas relief cannot be granted unless the state court's decision was contrary to, or involved an unreasonable application of, federal law as determined by the United States Supreme Court.  See *Williams v. Taylor*, 529 U.S. 362, 402–03 (2000); *Warren v. Baenen*, 712 F.3d 1090, 1096 (7th Cir. 2013).  Habeas relief "has historically been regarded as an extraordinary remedy, a 'bulwark against convictions that violate fundamental fairness.'"  *Brecht v. Abrahamson*, 507 U.S. 619, 633 (1993) (quotation omitted).  Habeas petitions require federal courts "essentially to reopen the criminal process to a person who already has had an opportunity for full process," *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007), and are used as a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal," *Harrington v. Richter*, 562 U.S. 86, 102–103 (2011) (quotation omitted).  To obtain relief, "a state petitioner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington*, 562 U.S. at 103.

## III.     Analysis

### A.     Claims Not Alleging Violations of Federal Law

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991).  The Supreme Court has "stated many times that 'federal habeas corpus relief does not lie for errors of state law.'"  *Id.* (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)); see

also 28 U.S.C. § 2254(a). "State law means what state courts say it means. A claim that the state court misunderstood the substantive requirements of state law does not present a claim under § 2254." *Bates v. McCaughtry*, 934 F.2d 99, 102 (7th Cir. 1991) (citations omitted).

As an initial matter, the Court concludes that Petitioner's Claims 1, 4, 5, and 6 are not cognizable under Section 2254 because they do not allege violations of federal law.[1] The Court first addresses Claims 1, 5, and 6—all of which involve arguments about jury instructions—and then turns to the distinct issues presented by Claim 4.

### 1. Claims 1, 5, and 6

Petitioner's argues that he was entitled to receive specific jury instructions on prior inconsistent statements (Claim 1), a lesser-included offense (Claim 5), and spoliation (Claim 6). "Whether a defendant is entitled to a particular jury instruction in state court is a matter of state law." *Maclin v. Pfister*, 2016 WL 4439939, at *8 (N.D. Ill. Aug. 23, 2016). All three of these claims turn on whether Illinois courts erred in deciding that Illinois law did not require these jury instructions based on the evidence at trial. See *Perruquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004) ("a state trial court's evidentiary rulings and jury instructions turn on state law"). The fact that Petitioner "relied upon state cases which engaged in a non-constitutional analysis based solely on state law principles belies the notion that the Illinois appellate court should have understood that [Petitioner] was invoking his rights under the U.S. constitution." *Wilson v. Briley,* 243 F.3d 325, 328 (7th Cir. 2001).

---

[1] Claim 2 alleges prosecutorial misconduct in violation of the Sixth and Fourteenth Amendments [1, at 8], and Claim 3 alleges ineffective assistance of appellate counsel in violation of the Fourteenth Amendment [*id.* at 9]. Respondent does not argue that either claim is not cognizable under federal law. [19, at 10–11.] Although Petitioner never referenced the Sixth Amendment in his arguments on direct appeal [20-2], the underlying facts and legal theories for these claims have remained essentially the same throughout Petitioner's arguments in state court.

In particular, the substance of Claim 1 is that the evidence at trial supported instructing the jury with the portion of the Illinois Pattern Instruction 3.11 related to prior inconsistent statements "written or signed by the witness," evidenced by the fact that the committees notes recommend that this instruction be given "in [its] entirety" when required by the evidence. [20-2, at 14–20; 20-5, at 11–26; 22 at 9–10.] A claim based on the misapplication of an Illinois Pattern Jury Instruction is a claim under state law. See, *e.g.*, *Lenoir v. Williams*, 2015 WL 684743, at *7 (N.D. Ill. Feb. 17, 2015) (holding that petitioner's claim that the trial court erred in giving an Illinois Pattern Jury Instruction was "raised * * * under state law"); *United States v. Butler*, 2016 WL 772804, at *6 (N.D. Ill. Feb. 29, 2016) (same). In addition, Petitioner argues that the impact of this error was that jury was not properly instructed on how to consider "Jessie Knox's affidavit," which it should have treated it as "substantive evidence." [1, at 8.] How evidence should be treated by the factfinder also presents an issue of state law. See *Robertson v. Hanks*, 140 F.3d 707, 712 (7th Cir. 1998) (holding that an "evidentiary ruling by a state court is not cognizable in a federal habeas corpus proceeding"); *Hayes v. Battaglia*, 403 F.3d 935, 939 (7th Cir. 2005) ("[I]f (as [petitioner] insists) the evidence should have been excluded as a matter of Illinois law that is none of our concern. Section 2254 is not a means to enforce rules of state law." (internal citation omitted)).

Similarly, Claims 5 and 6 are framed in terms of the trial judge's abuse of discretion. [See 1, at 10–11.] "[A]buse-of-discretion arguments are ubiquitous, and most often they have little or nothing to do with constitutional safeguards." *Wilson*, 243 F.3d at 328. In his post-conviction appeal [20-9], Claims 5 and 6 were embedded within Petitioner's argument that his direct appellate counsel was ineffective for failing to pursue these claims (more on that below). In resolving this ineffective assistance claim, the Illinois Appellate Court relied solely on Illinois

law in deciding that the "lesser included offense instruction lacks substantive merit" and the failure to give the spoliation instruction was harmless. *Johnson*, 2014 IL App (1st) 120750-U, ¶¶ 22–50; accord *United States ex rel. Chester v. Pfister*, 2015 WL 1345767, at *5 (N.D. Ill. Mar. 23, 2015) (denying that petitioner's challenge to "the proper test" for "what constitutes a lesser included offense" because it was a claim that "his jury instruction[s] * * * violated Illinois law" and "the Illinois courts accordingly applied only state law standards in ruling on his claim"). Whether these instructions were required—and thus the trial judge abused his discretion in denying these instructions—depends on the requirements of state law. It is "not the province of a federal habeas court to reexamine state-court determinations on state law questions," and thus Claims 1, 5, and 6 are not cognizable. *Estelle*, 502 U.S. at 67–68.

Of course, it is true that erroneous jury instructions may violate a criminal defendant's constitutional rights. See, *e.g.*, *Evans v. Dorethy*, 833 F.3d 758, 761 (7th Cir. 2016) (holding that petitioner alleged a Sixth Amendment violation where he asserted that his jury instructions omitted an "element" of the charged crime); *Leach v. Kolb*, 911 F.2d 1249, 1257 (7th Cir. 1990) ("[W]here the petitioner alleges constitutional error due to the trial court's refusal to allow a defense instruction, the constitutional question is limited to whether the petitioner sufficiently alleges a 'fundamental defect which inherently results in a complete miscarriage of justice.'" (citation omitted)); see also *Cupp v. Naughten*, 414 U.S. 141, 146 (1973) ("Before a federal court may overturn a conviction resulting from a state trial in which this instruction was used, it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment."). But Petitioner did not fairly present his claims this way in state court and that dooms his request for habeas relief here.

Petitioner's direct appellate argument concerning Claim 1 contains a few stray references to the "right to a fair trial," mostly in the section headings of his argument. [See 20-2.] But "scattered references to 'due process" and 'right to a fair trial' without any supporting constitutional analysis are insufficient to satisfy the requirement of fair presentment." *Whitfield v. Sternes*, 66 F. App'x 40, 43 (7th Cir. 2003) (references appeared in section headings). To apprise state courts of a violation of federal law, "Petitioner must do more than 'phrase-drop' constitutional terms; he must go 'beyond the due process label to a more meaningful level of specificity.'" *Id.* (quoting *Chambers v. McCaughtry,* 264 F.3d 732, 739 (7th Cir. 2001)). Petitioner advanced his challenge to the prior inconsistent statement jury instructions in terms of the requirements of Illinois law. He cannot try to convert this state law claim into a constitutional one for the first time on federal habeas review.

For Claims 5 and 6, his post-conviction appellate briefs go somewhat further, but still fall short of raising federal constitutional claims. The closest Petitioner comes for his lesser-included offense instruction argument (Claim 5) is on page 20 of his opening brief to the Illinois Appellate Court [20-9]—nestled within his nine page discussion of Illinois law—where he cites *Keeble v. United States*, 412 U.S. 205 (1973), and *Beck v. Alabama*, 447 U.S. 625 (1980), and states that "A defendant is entitled to a lesser-included offense instruction where, under the evidence, a jury could rationally find him guilty of the lesser count. Due process requires lesser-included instructions when the evidence warrants." Neither case, however, identifies a federal constitutional right under the Due Process Clause of the Fourteenth Amendment to a lesser-included offense instruction for non-capital cases. See *Keeble*, 412 U.S. at 208 ("The Federal Rules of Criminal Procedure deal with lesser included offenses."); *Beck*, 447 U.S. at 638 n.14 ("We need not and do not decide whether the Due Process Clause would require the giving of

such instructions in a noncapital case."); see also *Calloway v. Montgomery*, 512 F.3d 940, 944 (7th Cir. 2008) ("[T]he *Beck* footnote requires us to conclude that on this issue in a noncapital case, there is no clearly established Supreme Court precedent" that requires a lesser included offense instruction.); *Nichols v. Gagnon*, 710 F.2d 1267, 1271 (7th Cir. 1983) (same).[2] Regardless, "citation to federal case law does not change the nature of his underlying claim." *Ambrose v. Holmes*, 112 F. App'x 514, 518 (7th Cir. 2004). Counsel "must sketch an argument about *why* the conviction violates" the due process clause. *Riggins v. McGinnis*, 50 F.3d 492, 494 (7th Cir. 1995) (explaining that "'Due process' is such a ductile concept that phrase-dropping is the equivalent of no argument at all"). The Illinois Appellate Court correctly recognized that Petitioner's jury instruction argument raised only state law issues—an understanding that was reaffirmed by Petitioner's post-conviction PLA, which frames this issue as how to define "*Illinois'* common [criminal] design rule" [20-12, at 3, 6–10 (emphasis added)].

The same is true for his spoliation argument (Claim 6). Petitioner cites the Fifth, Sixth, and Fourteenth Amendments for the point that "inappropriate instructions can deny a fair trial and due process" and "prevent the jury from fulling its constitutional function." [20-9, at 35.] He follows these statements with citations to the Illinois Constitution and Illinois case law discussing the failure to instruct the jury correctly on the elements of an offense—an error that he does not assert occurred here. *Id.* (citing *People v. Ogunsola*, 87 Ill. 2d 216, 222 (1981), and *People v. Jenkins*, 69 Ill. 2d 61, 66 (1977)). Petitioner makes no further reference to these amendments or constitutional principles in his argument. See *Chambers*, 264 F.3d at 738 ("A

---

[2] Failures to instruct may violate the Fourteenth Amendment Due Process Clause if they rise to the level of a "fundamental miscarriage of justice," *Nicholas*, 710 F.2d at 1272, but Petitioner has never advanced this argument and all errors do not automatically meet this standard. See, *e.g.*, *U.S. ex rel. Stamps v. Hartigan*, 586 F. Supp. 1575, 1577 (N.D. Ill. 1984) (explaining that while "the omission of a jury instruction may be a proper issue under Illinois law" it does not necessarily follow that the omission of the instruction "amounts to a complete miscarriage of justice which violates due process").

mere 'passing reference' to a constitutional issue certainly does not suffice." (citation omitted));

*Weaver v. Pfister*, 2016 WL 930550, at *18 (N.D. Ill. Mar. 11, 2016) (holding that "mention of *

* * the admission of this evidence as denying him 'a fair trial, and due process of law pursuant to

the fourteenth amendment guarantee of the United State Constitution' in one sentence [] is not

sufficient to preserve this issue for federal review" (internal citation omitted)).  As the Seventh

Circuit has explained, "the words 'due process' are not an argument."  *Riggins*, 50 F.3d at 494.

Petitioner also cites Justice Stevens' concurrence from *Arizona v. Youngblood*, 488 U.S.

51 (1989), as an "example" to "illustrate" how spoliation instructions can cure violations of a

defendant's rights.  [20-9, at 40.]  In *Youngblood*, the Supreme Court concluded that "unless a

criminal defendant can show bad faith on the part of the police, failure to preserve potentially

useful evidence does not constitute a denial of due process of law."  488 U.S. at 58 (finding no

due process violation).  Petitioner's counsel did not discuss the *Youngblood* test, argue or

identify evidence showing that Detective El-Amin acted with bad faith [see 20-9, at 36–38], or

explain how or why the absence of a spoliation instruction violates the Fourteenth Amendment.

*Cf. Tabb v. Butler*, 2016 WL 1056657, at *5 (N.D. Ill. Mar. 17, 2016) (describing a petitioner

who raised a *Youngblood* claim).  That is because this reference to Justice Stevens' *Youngblood*

concurrence—within a fourteen-page discussion of state evidence law and ineffective assistance

of appellate counsel claim—was as an "example," not an assertion of an independent

constitutional claim.  Citation to *Youngblood* or the Fourteenth Amendment, without more, does

not transform Petitioner's arguments about the misapplication of state discovery law into federal

constitutional violation or "apprise the state court that he was complaining of more than a simple

violation of state law."  *U.S. ex rel. Bishop v. McCann*, 2007 WL 2893632, at *3–4 (N.D. Ill.

Sept. 27, 2007).

### 2. Claim 4

Claim 4 is that the trial judge who denied Petitioner's post-conviction petition "addressed only two" of the five "distinct issues" from the petition in his oral ruling and therefore "failed to read" the petition in violation of the Fourteenth Amendment [1, at 9]. Respondent argues that this claim is not cognizable. [19, at 10–11.] The Court agrees. "No constitutional provision or federal law entitles a defendant to any state collateral review." *Jackson v. Duckworth,* 112 F.3d 878, 880 (7th Cir.1997) (citing *Pennsylvania v. Finley,* 481 U.S. 551, 557 (1987)). That is because "[f]ederal habeas corpus cannot remedy an error in a state collateral proceeding where the error has nothing to do with the reason for a defendant's confinement." *Zamora v. Pierson*, 158 F. Supp. 2d 830, 836 (N.D. Ill. 2001); see also *Kraemer v. Grounds*, 2013 WL 4804893, at *4 (N.D. Ill. Sept. 9, 2013) ("Federal habeas corpus does not provide redress for purported errors in state post-conviction proceedings"); *U.S. ex rel. Hanna v. Welborn*, 1986 WL 7691, at *5 (N.D. Ill. June 25, 1986) ("Infirmities in the state's post[-]conviction remedy procedure cannot serve as a basis for setting aside a valid original conviction." (citation omitted)); *Luczak v. Schomig*, 2003 WL 1627844, at *10 (N.D. Ill. Mar. 27, 2003) (same). "Unless state collateral review violates some independent constitutional right, * * * errors in state collateral review cannot form the basis for federal habeas corpus relief." *Montgomery v. Meloy*, 90 F.3d 1200, 1206 (7th Cir. 1996).

Petitioner cannot "transform a state-law issue" regarding alleged errors in his post-conviction proceedings "into a federal one merely by asserting a violation of due process." *Mishler v. Superintendent*, 2016 WL 1658672, at *5 (N.D. Ind. Apr. 26, 2016) (denying claims that state "post-conviction court did not issue subpoenas for requested witnesses and failed to enter written findings of facts and conclusions of law" as not cognizable, even though petitioner

"included the words 'due process'" in his petition); see also *Jones v. Butler*, 778 F.3d 575, 586 (7th Cir. 2015) (holding that state post-conviction court's denial of evidentiary hearing, which petitioner claimed "was a violation of his due process rights," was simply a challenge to state law post-conviction procedures and not cognizable). In fact, federal courts routinely deny habeas challenges to the process that a petitioner received in state post-conviction proceedings.[3]

The same is required of Claim 4. See *Strowmatt v. Superintendent*, 2011 WL 4496527, at *2, 5 (N.D. Ind. Sept. 26, 2011) (holding that state post-conviction court's failure to "adequately consider" petitioner's claims was not cognizable). The challenge to whether the trial judge read his petition "represent[s] an attack on a proceeding collateral to detention of appellant and not on the detention itself." *Zamora*, 158 F. Supp. 2d at 836. Moreover, the Illinois Appellate Court's ruling that "the trial court did not need to discuss every claim in the second amended petition when making its ruling" is a determination of what state law requires when deciding post-conviction claims. *Johnson*, 2014 IL App (1st) 120750-U, ¶ 58. "Because state law established the due process * * * rights [that Petitioner] claims were violated, they are not cognizable under federal habeas review." *Moore v. Hardy*, 2013 WL 1816253, at *17 (N.D. Ill. Apr. 29, 2013).

---

[3] See, *e.g.*, *United States ex rel. Brown v. Chandler*, 2013 WL 6198182, at *6 (N.D. Ill. Nov. 27, 2013) (denying claim that petitioner's state habeas petition was "disposed of in his absence" and the state's motion to dismiss was "granted in error" because "errors occurring in the state post-conviction proceedings * * * do not implicate the legality of the petitioner's confinement"); *Vickers v. Superintendent*, 2012 WL 2990692, at *1 n.1 (N.D. Ind. July 20, 2012) (holding that state post-conviction court's "errors in connection with admission of evidence at the post-conviction hearing" were not "a basis for granting federal habeas relief"); *Carter v. Superintendent*, 2011 WL 854875, at *24 (N.D. Ind. Mar. 8, 2011) (denying claim that "the state court violated his due process rights in connection with evidentiary rulings it made in the post-conviction proceedings" because "such errors do not implicate the legality of the petitioner's confinement" and are not cognizable); *U.S. ex rel. Greer v. Winters*, 2004 WL 2064400, at *3 (N.D. Ill. Sept. 13, 2004) (denying claim that post-conviction court "failed to accept the facts contained in the petition and the accompanying affidavits and medical records as true" because "[t]his claim is not cognizable"); *U.S. ex rel. Johnson v. Tally*, 47 F. Supp. 2d 943, 956 (N.D. Ill. 1999) (denying claim that "'all post[-]conviction decisions were made without receiving the record'" because the "gist" of this claim was that "the state courts made errors in conducting his post-conviction proceedings"); *U.S. ex rel. Walton v. Gilmore*, 1998 WL 485679, at *2 n.3 (N.D. Ill. Aug. 12, 1998) (summarily dismissing challenge to the "fairness" of petitioner's state post-conviction proceedings).

**B.      Procedural Default**

A federal court cannot reach the merits of a habeas claim that has been procedurally defaulted.  There are two "paradigmatic" forms of procedural default.  *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014).  First, "a claim [is] procedurally defaulted through a petitioner's initial failure to preserve it with an objection, even if the petitioner later does attempt to present it for review."  *Id.*  "[W]hen a state court refuses to reach the merits of a petitioner's federal claims because they were not raised in accord with the state's procedural rules (i.e., because the petitioner failed to contemporaneously object), that decision rests on independent and adequate state procedural grounds."  *Id.* (citing *Kaczmarek v. Rednour*, 627 F.3d 586, 591 (7th Cir. 2010)).  And "[i]f a state court denies relief 'by relying on a state law ground that is both independent of the federal question and adequate to support the judgment, federal habeas review of the claim is foreclosed.'"  *Carter v. Douma*, 796 F.3d 726, 733 (7th Cir. 2015) (citation omitted).

Second, "a claim [is] procedurally defaulted when a petitioner fails to 'fairly present' his claim to the state courts, regardless of whether he initially preserved it with an objection at the trial level."  *Richardson*, 745 F.3d at 268.  "To fairly present his federal claim, a petitioner must assert that claim throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings."  *Id.* (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).  "In Illinois, this means that a petitioner must have directly appealed to the Illinois Appellate Court and presented the claim in a petition for leave to appeal to the Illinois Supreme Court."  *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007).  "[I]f a specific claim is not presented to the state court when it is required to be, that claim is defaulted."  *Johnson v. Loftus*, 518 F.3d 453, 455 (7th Cir. 2008).  "As part of this [complete round] requirement, a petitioner must have fairly presented both the operative facts and legal principles

that control each claim to the state judiciary." *Mulero v. Thompson*, 668 F.3d 529, 536 (7th Cir. 2012) (quoting *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010)). In other words, the issue is if "the state court was sufficiently alerted to the federal constitutional nature of the issue to permit it to resolve that issue on a federal basis." *McDowell v. Lemke*, 737 F.3d 476, 482 (7th Cir. 2013) (quoting *Ellsworth v. Levenhagen,* 248 F.3d 634, 639 (7th Cir. 2001)).

Federal courts will not review procedurally defaulted claims unless "the petitioner can show both cause for and prejudice from the default," or "demonstrate a sufficient probability that our failure to review his federal claim will result in a fundamental miscarriage of justice." *Gray*, 598 F.3d 324, 328 (7th Cir. 2010); *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). To show cause, a petitioner must establish there was as "'an objective factor, external to the defense, that impeded the defendant's efforts to raise the claim in an earlier proceeding. Prejudice means an error which so infected the entire trial that the resulting conviction violates due process.'" *Weddington v. Zatecky*, 721 F.3d 456, 465 (7th Cir. 2013) (citation omitted). The "objective factors" include (1) "'interference by officials that makes compliance * * * impractical'; (2) constitutionally ineffective assistance of counsel; and (3) 'a showing that the factual or legal basis for a claim was not reasonably available to counsel.'" *Guest*, 474 F.3d at 930 (citations omitted). To show that a "fundamental miscarriage of justice" would result, a petitioner must establish that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Before applying these principles here, the Court notes that Respondent raised the procedural default defense for claims 2, 3, 5, and 6, but not Claims 1 and 4. While a district court may raise procedural default *sua sponte*, it is "not permitted to override the state's decision implicit or explicit * * * to forego that defense." *Henderson v. Thieret*, 859 F.2d 492, 498 (7th

Cir. 1988). The Seventh Circuit has explained that "where the State has responded to one habeas claim on its merits while asserting that another is procedurally barred, it has implicitly waived any contention that the first claim is also procedurally defaulted." *Perruquet*, 390 F.3d at 516 (collecting cases). In *Henderson*, for example, the respondent raised the procedural default defense to one claim, but deliberately declined to pursue this defense for another claim despite the district court's urging. 859 F.2d at 498. In that circumstance, the district court's decision to raise procedural default *sua sponte* was improper. *Id.* In contrast, the respondent in *Perruquet* relied on procedural default for certain claims but not a due process claim. This did not show waiver because the respondent had argued first that the due process claim was not cognizable. 390 F.3d at 516. "Logically, the argument that the State did make came first in order of priority (the petition failed to state a cognizable federal claim); the procedural default argument springs from a contrary premise (the petition did state a cognizable federal claim, but one that was never presented to the state courts) that the district court never embraced." *Id.* at 517. In those circumstances, the failure to argue in the alternative that the claim had procedurally defaulted did not "signal[] an intent to forgo such a defense." *Id.* at 516.

The same is true here. Respondent argues first that Claims 1 and 4 are not cognizable [19, at 10–11], and does not address the merits of these claims or further engage with them. Respondent's omission of the procedural default defense as an alternative ground for dismissing Claims 1 and 4, therefore, does not suggest implicit waiver and the Court may consider this argument for these claims. And, after examining the record, the Court concludes that nearly all of Petitioner's claims are procedurally defaulted: Claims 1 and 2 were rejected on independent and adequate state procedural grounds and Claims 3(a), 4, 5, and 6 do not satisfy the "complete round requirement." Therefore, federal habeas review is foreclosed for all but Claim 3(b).

## 1.    Claims 1 and 2

Petitioner did not raise his prior inconsistent statement jury instruction argument (Claim 1) or his challenges to the State's closing argument (Claim 2) in his post-conviction petition, but he did raise both claims in his direct appeal and original PLA.  [See 20-2, at 6; 20-5, at 3.]  Before the Illinois Appellate Court, Petitioner conceded that his trial counsel did not object to this jury instruction at trial or raise this argument in his post-trial motion.  [20-1, at 7; 20-2 at 23.]  He also conceded that his trial counsel did not object to the State's closing argument and raised only one issue about the closing in his posttrial motion:  the prosecutor's argument that Petitioner chose the evidence against him.  [20-1, at 9–10; 20-2 at 31.]  "Illinois law requires a convicted defendant to include any and all claims of error in a post-trial motion for a new trial," and "failure to comply with this requirement amounts to a waiver of the claim."  *Miranda v. Leibach*, 394 F.3d 984, 992 (7th Cir. 2005).  Pursuant to Illinois law, the Illinois Appellate Court found that both of these arguments had been "waived" or "subject to forfeiture."  [20-1, at 7, 10 (citing *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) ("the failure to raise an issue in a written motion for a new trial results in a waiver of that issue on appeal.").]

In view of the foregoing circumstances, the state appellate court's ruling that Petitioner had failed to comply with state law requirements for preserving appellate issues constitutes an independent and adequate state procedural ground of decision that precludes this Court's habeas review.[4]  See *Lostutter v. Peters*, 50 F.3d 392, 394–95 (7th Cir. 1995) ("the district court [properly] refused to address its merits because the state appellate court's holding that he had waived his jury instruction claim established an independent and adequate state ground for the

---

[4] To the extent Petitioner argues that Claim 1 relates to federal constitution violations, no state court has addressed that claim.  Because he has not fairly presented these *federal* claims through at least one complete round of state-court review, Claims 1 is procedurally defaulted for this reason as well. *Whitfield*, 66 F. App'x at 43; *Chester*, 2015 WL 1345767, at *5; *Lenoir*, 2015 WL 684743, at *7.

decision"); *U.S. ex rel. Bruce v. McCann*, 598 F. Supp. 2d 890, 898 (N.D. Ill. 2009) (Because "Petitioner waived his prosecutorial misconduct claim by failing to include it in his post-trial motion[,] * * * this Court is barred from reviewing Petitioner's prosecutorial misconduct claim on the merits under the adequate and independent state grounds doctrine[.]"); *Mitchell v. Williams*, 2015 WL 5722447, at *6 (N.D. Ill. Sept. 29, 2015) ("The trial court relied on * * * the state law proposition that a party forfeits an argument on appeal by not presenting it at trial. Consequently, the Illinois appellate court's determination rested on an independent and adequate state ground.").

The fact that the Illinois Appellate Court went on to consider both of Petitioner's arguments under plain error review "despite waiver" does not overcome this procedural bar. [20-1, at 7, 10]; see, *e.g.*, *Gray v. Hardy*, 598 F.3d 324, 329 (7th Cir. 2010) ("[T]he state court's conclusion that [petitioner] had not established plain error was not a decision on the merits, and thus we agree with the district court that the claim is procedurally defaulted[.]"); *Mitchell*, 2015 WL 5722447, at *6 ("The Illinois appellate court's alternative discussion of the claim on the merits does not ameliorate the procedural default."); *United States v. Butler*, 2016 WL 772804, at *5 n.2 (N.D. Ill. Feb. 29, 2016) (holding that state appellate court's discussion of whether jury instruction constituted plain error does not excuse procedural default). "A state court may say something like: 'this argument has been forfeited because not raised in the proper way (such as by an objection to the jury instructions); and the defendant has not established plain error because there was no error at all.'" *Brooks v. Walls*, 279 F.3d 518, 523 (7th Cir. 2002) (citation omitted). "When it does this, it has not abandoned the procedural ground but has instead added a substantive failing to the procedural one." *Id.* Moreover, "the determination that plain error had not occurred is, in itself, an independent and adequate state law ground which precludes federal

review where the state court did not intend to forgive an earlier procedural default and reach the merits of the federal claim." *U.S. ex rel. Mauldin v. McAdory*, 2004 WL 1244119, at *5 (N.D. Ill. June 4, 2004). Accordingly the Appellate Court's finding of no plain error for Claims 1 and 2 represents yet another state law grounds that bars federal habeas review. Simply put, Claims 1 and 2 rest on independent and adequate state procedural grounds and are procedurally defaulted.

Petitioner cannot excuse his procedural default of both claims. He does not advance any "actual innocence" arguments. *Cf. House v. Bell*, 547 U.S. 518, 537 (2006); *Hayes v. Battaglia*, 403 F.3d 935, 937 (7th Cir. 2005). Nor does he address specifically whether he can show cause and prejudice to excuse default. However, his reply brief notes that his direct appellate counsel "raised procedural ineffective assistance of trial counsel" for both claims. [22, at 10–11.] By this, Petitioner means that his direct appellate counsel argued "alternatively" that his trial attorney was ineffective for failing to object to this jury instruction and closing argument—an argument advanced in an effort to persuade the Illinois Appellate Court to consider both issues even though they were waived. [20-2, at 24, 33.] This alternative argument appears in two paragraphs in his direct appellate counsel's opening brief [*id.*], one sentence in his reply brief [20-4, at 4], and in roughly same form in Petitioner's handwritten PLA. [20-5, at 23–26, 37.]

Because Petitioner is proceeding *pro se*, the Court construes the comment in his reply as implicating the second "objective factor" that can constitute sufficient cause. *Guest*, 474 F.3d at 930. "Attorney error rising to the level of ineffective assistance of counsel can constitute cause to set aside a procedural default." *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008). "However, the exhaustion doctrine requires that an ineffective-assistance claim be presented to the state court as an independent claim before it can be used to excuse a procedural default."

*Carter v. Pfister*, 2016 WL 5843626, at *6 (N.D. Ill. Oct. 3, 2016); *Edwards*, 529 U.S. at 453; *Murray*, 477 U.S. at 489; *Smith*, 565 F.3d at 352.

Raising ineffective assistance arguments in this manner does not avoid default. Petitioner did not "present[]" an ineffective assistance claim "to the state courts as an *independent* claim" on direct appeal. *Murray*, 477 U.S. at 489 (emphasis added); *Edwards*, 529 U.S. at 453. Rather, he argued on appeal that his trial counsel's ineffectiveness was a hook to reach his forfeited jury instruction and closing argument claims. [20-2, at 24, 33.] That is how the state appellate court understood this argument. [See 20-1, at 7 ("Defendant alternatively argues that the error was due to ineffectiveness of counsel and this court may consider the issue despite waiver[.]"); *id.* at 10 ("defendant again argues that this matter must be reviewed under the plain error doctrine or due to ineffective assistance of counsel for failing to object to the State's comments").] Petitioner's appellate counsel did not advance, and the state courts did not consider, a constitutional analysis of the right to effective assistance of counsel as a distinct basis to grant a new trial.

Moreover, although Petitioner raised independent claims of ineffective assistance in his post-conviction petition, he did not identify the substance behind Claim 1 or 2 as a reason that his counsel was ineffective. Petitioner must have "identified the specific acts or omissions of counsel that form the basis for" the ineffective assistance claim to avoid procedural default. *Johnson v. Hulett*, 574 F.3d 428, 432 (7th Cir. 2009); accord *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007); *Pole v. Randolph*, 570 F.3d 922, 935 (7th Cir. 2009); *Ogden v. Hulick*, 2008 WL 1805386, at *7 (C.D. Ill. Apr. 18, 2008). The state courts considering Petitioner's direct appeal were not "sufficiently alerted" to a standalone ineffective assistance of trial counsel claim on these bases. *McDowell*, 737 F.3d at 482. Petitioner's failure to independently exhaust his argument that this specific aspect of his trial counsel's performance constituted ineffective

assistance of counsel means this "claim" is defaulted.  Because there is no reason to excuse this "second level" of default, Petitioner's defaulted claim of ineffective assistance of counsel cannot excuse his procedural default of Claims 1 and 2, and these claims are "fully defaulted." *Dellinger v. Bowen*, 301 F.3d 758, 766 (7th Cir. 2002).

In any event, even if this ineffective assistance claim was not procedurally defaulted, Petitioner cannot show the Illinois Appellate Court erred when it found that Petitioner was not sufficiently "prejudiced" because the evidence against him was "overwhelming."  [20-1, at 9]; see also *Whitehead v. Cowan,* 263 F.3d 708, 729 (7th Cir. 2001) ("Strong evidence of guilt eliminates any lingering doubt that the prosecutor's remarks unfairly prejudiced the jury's deliberations.").  "State factual findings are presumed correct, however, unless the petitioner rebuts the presumption by clear and convincing evidence." *U.S. ex rel. Russell v. Gaetz*, 628 F. Supp. 2d 820, 835 (N.D. Ill. 2009) (finding that the Illinois Appellate Court did not rely on an "unreasonable determination of the facts when it concluded that the evidence was not closely balanced").  Although Plaintiff asserts that he "challenges the presumption of correctness of the State court's findings" [1, at 8], he does not identify any evidence—let alone clear and convincing evidence—that undermines the state court's conclusion that the evidence at trial was overwhelmingly against him or the manner in which the court weighed this evidence [20-1, at 8].

Moreover, on habeas review, "[t]he pivotal question is whether the state court's application of the *Strickland* [*v. Washington*, 466 U.S. 688 (1984)] standard was unreasonable," and "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington v. Richter*, 562 U.S. 86, 101 (2011); see also *Bell v. Cone*, 535 U.S. 685, 698–99 (2002); *Murrell v. Frank*, 332 F.3d 1102, 1111 (7th Cir. 2003).  When the "highly deferential" standards created by *Strickland* and §

2254(d) are applied together, review is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009). Thus, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

Applying this doubly deferential standard, the Court cannot say that the Illinois Appellate Court unreasonably weighed the evidence against Petitioner or unreasonably concluded that these alleged errors identified would not have changed the outcome at trial. The nearly identical eyewitness testimony from Smith and Knox was corroborated by Petitioner's signed statement to police, portions of his trial testimony, and McKee's testimony to the grand jury. Petitioner and McKee admitted to lying to the police, and their stories were that Triplett had fired into the crowd to stop others from stealing their guns. In this context, trial counsel's failure to insist on the entire Illinois Pattern Instruction because of how it may have impacted the jury's evaluation of Knox's admittedly false affidavit made three years after the shooting does not fall below an objective standard of reasonableness or present an error "so serious as to deprive the defendant of a fair trial." *Strickland*, 466 U.S. at 687–68. The same is true of the failure to object to rhetorical aspects of State's closing argument: arguing that the jury can rely on its instructions to resolve questions is not obviously erroneous, emphasizing the importance of a defendant's confession is far from unusual, and raising the prospect that a defendant could cover up part of his or her crime scene is not an improper response to Petitioner's argument about the absence of DNA evidence. In any event, the Court instructed the jury that these arguments were not evidence [1, at Ex. DD, at NN-32]. Therefore, even if not defaulted, Petitioner's trial counsel's alleged ineffective assistance in failing to raise these arguments did not result in sufficient "prejudice" to overcome default of Claims 1 and 2.

### 2. Claim 4

Claim 4 is that Petitioner's post-conviction trial judge dismissed his petition "without reading it," evidenced by the fact that his petition "raised five distinction issues, but the judge, in dismissing it, addressed only two." [1, at 9.] By definition, this alleged error occurred after Petitioner's direct appellate review process had concluded, and Petitioner's only avenue to raise this claim would have been as part of his post-conviction review proceedings. Petitioner did raise this claim in his post-conviction appeal to the Illinois Appellate Court [see 20-9, at 53–56], but he omitted this argument from his post-conviction PLA [see 20-12]. As a result, even if this claim were cognizable, Petitioner has not fairly presented this claim through one complete round of state-court review. Petitioner does not identify any cause to excuse this omission from his attorney-drafted post-conviction PLA, and thus the Court's review of this claim is foreclosed.

### 3. Claims 3, 5, and 6

To evaluate whether Petitioner has fairly presented Claims 3, 5, and 6 through one complete round of state court proceedings, the Court must both untangle these overlapping claims and address how they were raised in state court. Again, Claim 5 is that the trial judge abused his discretion in denying a jury instruction on the lesser-included offense of reckless discharge of a firearm; Claim 6 is that the trial judge abused his discretion in denying a spoliation instruction based on Detective El-Amin's destruction of his investigation notes; and Claim 3 is that Petitioner's direct appellate counsel was ineffective for failing to raise both arguments. Petitioner did not raise any of these claims in his direct appeal channel, which means these claims are viable here only if "both the operative facts and legal principles that control each claim" were presented at each stage of the post-conviction process. *Mulero*, 668 F.3d at 536.

Respondent concedes that Petitioner raised Claims 5 and 6 in his post-conviction petition [19, at 14], but disputes that Petitioner raised either of his ineffective assistance of appellate counsel arguments in Claim 3 in his 2008 and 2011 post-conviction petitions [see *id.* at 13–14]. The Court disagrees. "As [Petitioner] prepared the petition without the assistance of counsel, we owe it a generous interpretation." *Lewis v. Sternes*, 390 F.3d 1019, 1027 (7th Cir. 2004) (citing *Haines v. Kerner,* 404 U.S. 519, 520 (1972)). Here, Petitioner's 2011 petition argues that his trial counsel was ineffective for five reasons, listed as 6(a)–(e). Reason 6(b) states that Petitioner's "trial counsel failed to put forth the relevant law pertaining to a lesser included offense" [20-23, at 93], which dovetails with the Petitioner's related argument that the trial judge abused his discretion in denying the lesser-included offense instruction [*id.* at 29–36]. Reason 6(e) states that "trial counsel failed to rely upon the facts of the case and the totality of evidence when requesting that the jury be instructed on Defense #2. Counsel's argument should have rested on the standard set forth in Brady and Bagley." *Id.* at 94–95. "Defense #2" refers to Petitioner's second proposed jury instruction: the spoliation instruction. [See 1, at Ex. N, at NN-13–15; 20-23, at 87–90.] Petitioner then incorporated his arguments about his trial counsel's ineffectiveness into the claim that his direct appellate counsel was ineffective, stating "petitioner asserts that his appellate counsel was ineffective in failing to raise on direct appeal such issues as cited herein at paragraph 6(a)[,] (b)[,] (c)[,] (d)[, and] (e)." Therefore, Petitioner's argument that his counsel failed to pursue the lesser-included offense and spoliation instructions on direct appeal was raised in his post-conviction petition. So far, so good for Claims 3, 5, and 6.

Petitioner's post-conviction appeal to the Illinois Appellate Court, however, did not present these arguments distinctly. [20-9.] His first "issue[] presented for review" is "[i]neffective assistance of appellate counsel." *Id.* at 9. He identifies the "two meritorious

claims" that his direct appellate counsel should have raised: "[d]enial of lesser-included instruction" and "[d]enial of spoliation instruction." *Id.* Petitioner ends his description of these sub-issues with the question, "should appellate counsel have raised this issue?" *Id.* In the argument section of his brief, Petitioner's sets out substantive arguments as to why the trial judge's denial of the lesser-included offense and spoliation instructions was reversible error but does so only under the umbrella of his ineffective assistance of appellate counsel argument. See *id.* at 26–48. It seems clear that Petitioner's ineffective assistance of appellate counsel argument (Claim 3) was fairly presented here. The question is, therefore, whether Petitioner's nesting of his trial judge "abuse of discretion" arguments (Claims 5 and 6) within his ineffective assistance of appellate counsel argument is sufficient to avoid procedural default of Claims 5 and 6.

The Seventh Circuit has on occasion found "a claim to be fairly presented where the only discussion of it appeared within the discussion of another claim." *McDowell*, 737 F.3d at 482. Such a "nested claim" must "be either (1) framed so it could stand on its own, were it presented in a different section of the post-conviction petition or (2) supported by 'very substantial analysis' throughout the petition." *Id.* Substantive claims may be nested within an ineffective assistance of counsel claim. See, *e.g.*, *Rittenhouse v. Battles,* 263 F.3d 689, 696 (7th Cir. 2001). However, "the leeway afforded to habeas petitioners in 'reformulating' due process arguments is much more limited than in other constitutional contexts." *Kurzawa*, 146 F.3d at 443. In *Rittenhouse*, the petitioner's "briefs to the Illinois courts only discussed the problems with the challenged instructions within the context of his argument that he was denied the effective assistance of trial counsel for his attorney's failure to object to these instructions." *Id.* However, a "close review" of his argument showed that he "did in fact present the Illinois Appellate Court with a very substantial analysis of alleged problems with the jury instructions." *Id.* Importantly,

this argument was that the erroneous "instructions created a mandatory presumption of legal responsibility[, which] clearly implicates the Due Process Clause." Finally, the state appellate court's analysis was that "the instructions did not create an improper presumption[, which] squarely addresses and rejects Rittenhouse's argument that is essentially a due process argument." *Id.* Thus, while a "close call," the Seventh Circuit erred on the side of finding the underlying claim not procedurally defaulted. *Id.*

Unlike *Rittenhouse*, the Court concludes that Claims 5 and 6 were not fairly presented before the Illinois Appellate Court in a way that clearly implicates the Fourteenth Amendment's Due Process Clause. Petitioner's appellate brief extensively discussed how the trial judge erred in denying both instructions [20-9, at 26–48], but (as noted above) that analysis made only passing reference to "due process" [*id.* at 27, 35] and largely focused on the Illinois common criminal design doctrine and appropriate sanctions for violations of Illinois discovery rules. For example, Petitioner's counsel framed the spoliation issue as "[h]ow the state violated discovery rules." *Id.* at 36. He argued that "as in [Illinois Supreme Court case], the State violated [Illinois] Supreme Court Rule 412(a), requiring the State to disclose written witness statements." *Id.* He also made clear that "this error alone would not require relief" and that his "claim[] ultimately rest[s] on ineffective assistance of appellate counsel." *Id.* at 40. In short, none of this analysis was framed to "stand alone" as an independent federal constitutional violation and does not consist of a "very substantial analysis" that squarely addresses what is "essentially" a due process argument. *McDowell*, 737 F.3d at 482.

Moreover, the background section of the Appellate Court's opinion states that "the two claims that are the subject of this appeal" are (1) that the "trial judge deprived petitioner of his right to due process and a fair trial," and (2) that the court's "analysis" was premised on the

principle that "appellate counsel is not ineffective for choosing not to raise meritless issues" and goes on to address whether these claims were "meritless" under Illinois law. *Johnson*, 2014 IL App (1st) 120750-U, ¶¶ 12, 18–50; see also *U.S. ex rel., Nance v. Fairman*, 707 F.2d 936, 941 (7th Cir. 1983) (holding that petitioner who asserted that exclusion of prior inconsistent statement violated Illinois evidence law, but did not raise a Sixth Amendment argument, could not do so on habeas review, explaining that "there is no doubt that the claim presented to the state courts arises out of the same factual circumstances as petitioner's constitutional claim" but "the issue presented to the state courts is a different *legal* issue from that presented in the federal court" (emphasis added)). The Illinois Appellate Court concluded that, "based on the foregoing authorities"—that is, Illinois case law—"the trial court did not abuse its discretion in refusing to instruct the jury on reckless discharge" because "[t]he codefendant's act of firing into the crowd was in furtherance of petitioner and his codefendant's admitted common criminal design as a matter of [Illinois] law." *Id.* ¶¶ 33, 38. Likewise, the court held that "the alleged error" from not receiving the spoliation sanction "was harmless * * * because the instruction would not have impacted the weight of the evidence or credibility of the State's witnesses sufficiently to cause a different result." *Id.* ¶¶ 44–50. Petitioner did not raise—and thus not surprisingly the state appellate court never meaningfully addressed—whether the failure to give these instructions violated due process or guarantees of fundamental fairness. Accordingly, any federal constitutional claims underlying Claims 5 and 6 are procedurally defaulted.

That leaves only Petitioner's claim that his direct appellate counsel was ineffective for failing to raise the lesser-included offense instruction (Claim 3(a)) and the spoliation instruction (Claim 3(b)). In his post-conviction PLA, Petitioner first argued that the trial judge abused his discretion in finding that the lesser-included offense was not appropriate based on the Illinois

"common design rule of criminal liability."  [20-12, at 6.]  Petitioner did not argue that his direct appellate counsel was ineffective for failing to raise this specific argument.  *Id.* at 6–10. Notably, Petitioner's second PLA argument was that "his appellate counsel should have raised the spoliation instruction issue."  *Id.* at 11; see also *id.* at 15–21 (discussing the appellate court's harmless error analysis, which only applied to the spoliation instruction argument, and arguing that "appellate counsel's failure to raise *this issue*" was deficient).  "Each ground of ineffective assistance is considered separate for exhaustion purposes," *Wilson v. Superintendent*, 2012 WL 1714734, at *8 (N.D. Ind. May 14, 2012), and "[t]he failure to alert the state court to a complaint about one aspect of counsel's assistance will lead to a procedural default."  *Stevens*, 489 F.3d at 894; accord *Pole*, 570 F.3d at 935; *Ogden*, 2008 WL 1805386, at *7.  Therefore, Claim 3(a) was not raised through one complete round of state court proceedings and is procedurally defaulted. Only Claim 3(b) survives for review on the merits.

## C.     Merits

To prevail on his claim that his direct appellate counsel was ineffective for failing to raise the spoliation instruction (Claim 3(b)), Petitioner must meet the familiar two-pronged "performance" and "prejudice" test set forth in *Strickland*, establishing that (1) his lawyer's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that the result of the proceedings would have been different but for his counsel's "unprofessional errors."  *Strickland*, 466 U.S. at 694; see also *Ward v. Jenkins,* 613 F.3d 692, 698 (7th Cir. 2010).  Both components of the test must be satisfied or the claim must be denied; "the lack of either is fatal."  *Eddmonds v. Peters*, 93 F.3d 1307, 1313 (7th Cir. 1996).

Petitioner can establish that his direct appellate counsel's performance was constitutionally deficient only "if counsel fails to appeal an issue that is both obvious and clearly

stronger than one that was raised." *Winters v. Miller*, 274 F.3d 1161, 1167 (7th Cir. 2001);
accord *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009). Appellate counsel is not required to
"raise every non-frivolous issue under the sun." *Mason v. Hanks*, 97 F.3d 887, 893 (7th Cir.
1996). In fact, the "process of 'winnowing out weaker arguments on appeal and focusing on'
those more likely to prevail, far from being evidence of incompetence, is the hallmark of
effective appellate advocacy." *Makiel v. Butler*, 782 F.3d 882, 897 (7th Cir. 2015) (quoting
*Smith v. Murray,* 477 U.S. 527, 536 (1986)). It is "generally difficult" to prove that the
"unraised claim is clearly stronger than a claim that was raised * * * because the comparative
strength of two claims is usually debatable." *Makiel*, 782 F.3d at 898 (citation and internal
quotation marks omitted). Furthermore, a petitioner demonstrates the requisite prejudice only
when appellate counsel fails to raise an issue that "may have resulted in a reversal of the
conviction, or an order for a new trial." *Winters*, 274 F.3d at 1167 (citing *Mason*, 97 F.3d at
893).

On appeal, Petitioner's counsel challenged the prior inconsistent statement jury
instructions and the State's closing argument. [20-2, at 6.] It is far from "obvious" that the
spoliation instruction argument was stronger than either issue that his appellate counsel raised.[5]
Petitioner does not identify—either here or in his state court filings—any case law establishing
that counsel's failure to raise the denial of a spoliation jury instruction constitutes ineffective
assistance. In fact, there is case law to the contrary. See *Fry v. Duckworth*, 105 F.3d 660 (7th
Cir. 1996) (Table) (applying *Youngblood* and affirming denial of habeas relief for claims of

---

[5] The Court assumes that the Illinois Appellate Court would have found Petitioner's original post-trial
motion sufficient to preserve his trial counsel's request for an adverse inference spoliation instruction,
despite the fact that the motion characterizes this claim as "the Court erred in not allowing instruction to
*disregard* the testimony of Detective El-Amin" [1, at Ex. E (emphasis added)]. Of course, if this claim
was not preserved in a post-trial motion, then it was forfeited. *Enoch*, 122 Ill. 2d at 186. And Petitioner
cannot show his appellate counsel's infectiveness for failing to raise a forfeited claim since "there is *no*
chance the outcome would have been different." *Richardson*, 745 F.3d at 273.

ineffective assistance of appellate counsel where petitioner argued his attorney should have raised due process claims related to police's destruction of petitioner's mugshot).

Had his appellate counsel looked to federal law, *Youngblood* would have required that Petitioner prove that Detective El-Amin acted in "bad faith" when he destroyed his notes, that the loss of this evidence was "material to [Petitioner's] defense by showing that 'the evidence possessed exculpatory value apparent before it was destroyed [or lost,] and that it was of such a nature that he was unable to obtain comparable evidence by other means.'" *Fry*, 105 F.3d 660, at *3 (citations omitted). Petitioner's claim here falls short of the mark in several respects. First, Petitioner has never presented evidence that Detective El-Amin acted in bad faith when, pursuant to the routine practice of Chicago Heights Police Department, he destroyed his notes four years before the trial. Rather, Petitioner's post-conviction argument has been that this summary report was not an "adequate substitute" for the detective's notes and the trial court could have "no confidence that his report faithfully transcribed" his notes. [20-9, at 37–38.] Those arguments fall far short of suggesting bad faith. See *Adams v. Uchtman*, 2007 WL 2710486, at *7 (S.D. Ill. Sept. 12, 2007) ("[A] showing of mere negligence on the part of the police in losing evidence, if in fact the circumstances here even rise to the level of negligence, does not constitute a due process violation."). Likewise, there was no testimony or evidence that these notes "possessed exculpatory value apparent before [they were] destroyed." *Fry*, 105 F.3d 660, at *3. Detective El-Amin's testified that everything "important to this case" from his notes appeared in his summary report [20-9, at 38], and Petitioner could not satisfy his burden by speculating that this evidence would have somehow been exculpatory. Finally, Petitioner testified that he knew the other people playing dice and in the alley where shots were fired, and therefore offers no reason to think he was unable to obtain "comparable evidence" identifying witnesses without Detective

El-Amin's notes. *Fry*, 105 F.3d 660, at *3. "Thus, [his] appellate counsel acted within the realm of reasonable professional judgment in not raising these claims on direct appeal because they are clearly non-meritorious." *Id.*

Even focusing only on state law, the Court cannot say that Petitioner's direct appellate counsel fell below an objective standard of reasonableness by failing to raise this spoliation argument. As pointed out by the State in its post-conviction appellate brief in opposition, Illinois courts in June 2001 had held that police officers were not obligated to preserve their field notes if they were incorporated into police reports. [20-1, at 30 (citing *People v. Wittenmyer*, 151 Ill. 2d 175, 189 (1992) and *People v. Howard*, 121 Ill. App. 3d 938 (1st Dist. 1984)]. Even if his counsel could distinguish these cases and convince the state court that the Detective El-Amin was required to preserve his notes, Petitioner's counsel would need to still need to persuade a reviewing court that the trial judge abused his discretion in denying a spoliation sanction. *People v. Morgan*, 112 Ill. 2d 111, 135 (1986) (explaining that the "correct sanction" for a discovery violation "is left to the trial court's discretion, and the judgment of the trial judge is given great weight"). And, if he overcame this hurdle, Petitioner still would bear the burden to prove "that he was prejudiced by the discovery violation and the trial court failed to eliminate the prejudice." *People v. Lovejoy*, 235 Ill. 2d 97, 120 (2009). Petitioner's counsel may have simply concluded that demonstrating abuse of discretion in the face of these facts and this case law was unlikely to be successful. Or his counsel may have concluded that, based on the weight of the evidence against Petitioner and that his counsel in closing argued that "we don't know who all [Detective El-Amin] interviewed and what those persons said or about any leads that he followed up on" because he destroyed his notes [1, at Ex. D, at NN68], it would be incredibly difficult to show that he was prejudiced by the failure to receive this instruction. Regardless, the Court cannot say

that Petitioner's counsel was "objectively" deficient for failing to raise this claim despite its obvious hurdles or that this argument was "clearly stronger" than the claims he raised. *Winters*, 274 F.3d at 1167. Thus, the failure to raise this argument on direct appeal does not amount to ineffective assistance of appellate counsel. *Harrington*, 562 U.S. at 105.

Likewise, even if this claim should have been raised on direct appeal, Petitioner cannot show prejudice. As the Illinois Appellate Court explained when it considered Petitioner's post-conviction appeal, "[t]he failure to give an appropriate jury instruction as a sanction against the State for failing to comply with a discovery order is subject to harmless error analysis." *Johnson*, 2014 IL App (1st) 120750-U, ¶ 43. Under Illinois law, "instructional errors are deemed harmless if it is demonstrated that the result of the trial would not have been different had the jury been properly instructed." *People v. Washington*, 2012 IL 110283, ¶ 60 (2012). The Illinois Appellate Court concluded on direct appeal that the evidence against Petitioner was not closely balanced, but rather was "overwhelming[ly]" weighted against him. [20-1, at 8.] In other words, even if Petitioner's direct appellate counsel had raised this spoliation argument, the weight of the evidence and thus the outcome at trial would have been the same. See also *Johnson*, 2014 IL App (1st) 120750-U, ¶ 47 (finding that "it has been demonstrated that the outcome of trial would not have been different with the instruction regarding the detective's notes"). Therefore, the trial court's "error" in denying this instruction would have been harmless on direct appeal too. Because advancing this argument on direct appeal would not have led to reversal of his conviction, Petitioner cannot show prejudice from his direct appellate counsel's failure to raise this argument and Claim 3(b) under *Strickland* must fail. *Winters*, 274 F.3d at 1167.

To summarize, Claims 1, 4, 5, and 6 do not raise cognizable federal constitutional claims, Claims 1, 2, 3(a), 4, 5, and 6 were procedurally defaulted, and Claim 3(b) does not show an

unreasonable application of the Supreme Court case law regarding ineffective assistance of appellate counsel. Therefore, the Court denies habeas relief for all of Petitioner's claims.

## IV.     Certificate of Appealability

Per Rule 11(a) of the Rules Governing Section 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court must determine whether to grant Petitioner a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

A habeas petitioner does not have an absolute right to appeal a district court's denial of his habeas petition; instead, he must first request a certificate of appealability. See *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003); *Sandoval v. United States*, 574 F.3d 847, 852 (7th Cir. 2009). A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Miller-El*, 537 U.S. at 336; *Evans v. Circuit Court of Cook Cnty., Ill.*, 569 F.3d 665, 667 (7th Cir. 2009). Under this standard, Petitioner must demonstrate that reasonable jurists would find the Court's assessment of his § 2254 claims debatable or wrong. *Miller-El*, 537 U.S. at 336; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). And in cases where a district court denies a habeas claim on procedural grounds, the court should issue a certificate of appealability only if the petitioner shows that (1) jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling. See *Slack*, 529 U.S. at 484. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the

petitioner should be allowed to proceed further.  In such a circumstance, no appeal would be warranted."  *Id.* at 485; *Stamps v. Duncan*, 2014 WL 3748638, at *4 (N.D. Ill. July 30, 2014).

In view of the analysis set forth above, the Court concludes that Petitioner has not made a substantial showing that reasonable jurists would differ regarding the merits of his claims. Petitioner's claims are non-cognizable, procedurally defaulted, and/or lack merit, and thus further review is not warranted.  Accordingly, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

**V.      Conclusion**

For these reasons, the Court denies Petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254 [1].  The Court declines to certify any issues for appeal under 28 U.S.C. § 2253(c)(2), and directs the Clerk to enter judgment in favor of Respondent.


Dated: May 9, 2017

_____
Robert M. Dow, Jr.
United States District Judge